Good morning, Your Honors. May it please the Court, my name is Burke Huber, and I represent Appellant and Objector Lindsey Loomis. Ms. Loomis appeals the District Court's striking and overruling of her objections to the final approval of class action settlement on the grounds that class counsel's conflicts of interest defeated adequacy of representation. As an initial matter, I would just like to say that the District Court erred in striking Ms. Loomis' objections on the grounds that they were untimely. Let me ask you, what's the standard review on that? I believe it's... I know you say de novo, but I've looked and I don't think it is. I'm sorry, what was that? I know in your brief you said it was de novo review, but now I've looked and I don't think it is. I guess I'm trying to figure out where you came up with this idea would be de novo. It's all for untimeliness and it's not a dispute of law, it's a question of fact to be determined by the judge whether and when Loomis signed the objection and corrected it. And when I went to Hamilton Brothers Lumber v. Balkin, it seems to me this is an abuse of discretion decision. Okay, it may well be. I just know that the case that I read, I understood it to be de novo. If it's an abuse of discretion decision, then I owe some deference, don't I, to the District Court who sustained the objection? Yes, Your Honor, I believe you do if it's abuse of discretion. I would just say that... The objection, let me get the facts, the objection was filed on February 11th, 2015? Correct. At that point, it purported to be a pro per objection? Correct. It was not signed by Loomis? That's correct. It was not signed by counsel? That's correct. Then on March 12th, counsel appeared, gave the court a black and white copy of the objection that had at that point been signed in blue, and the blue original stamp, and said it was an original document? How could it have been an original document? Well, Your Honor, I'm not sure exactly what the original was stamped on the document for, but it wasn't intended to deceive the court. It wasn't intended... To deceive the court as an original, because... It wasn't an original? I don't believe it was the original, because the original was actually filed with the court on February 11th. Well, the original didn't have any signature. Yes, but that is true, but there's no requirement that it be signed, number one, and that Rule 11a of the Federal Rules of Civil Procedure allow it to be corrected. That permits the lack of signature to be corrected, that's in the Rules of Federal Procedure. Well, first point, doesn't Rule 11 also require everything that's filed to be signed? Rule 11, I believe it does, but that's to attest to veracity. I don't think it requires an objection to be signed. I don't see anything in the district rules or the northern district rules that require that. I'd like to, if I may, quickly move to the merits, assuming we get there. As I understand your theory, it is that there were two subclasses and that it was a conflict for counsel to represent both and also to represent the named plaintiffs in both their individual and class capacities. But that doesn't appear to me to be an actual conflict. It's a potential conflict, but I don't understand how in your view it ever ripened into any sort of actual conflict that would be a problem. First of all, I would just like to say that I think I believe it is an actual conflict. When you have two classes competing for payment from the same fund, I believe that to be a conflict. But in this Court, in Case v. Pacific Lundberg, does not require an actual conflict to be approved. It only requires the appearance of divided loyalties, which I believe exists here in spades. You have Graham Hollis representing two different classes, each competing for payment. I believe that plus the fact that he was representing four different classes. So in your view, in your view, in every class action in which there are subclasses that have slightly different types of claims, there has to be a multiplicity of lawyers, every subclass getting its own on pain of having any settlement annulled. Is that your view? My view is, is anytime you have two classes competing for payment, that creates a conflict where there's got to be representation for each class. But now here, we had the two classes you're talking about, the pet stylist class and the non-exempt employee class. They essentially asserted the same claims, right, for unpaid wages, failure to provide adequate meal and rest periods, failure to provide adequate wage statements and waiting time penalties, right? Yes. I believe that's correct. So since we have a limited fund, don't we in fact, if we accept your theory, need actually maybe four classes, maybe even eight, if we divide them between pet stylist and non-exempt? Because the folks that are asking for their unpaid wages back may have differences and different interests than the folks asking for failure, for remedies, for failure to pay the adequate meal and rest periods. They may have different interests and a remedy for the folks that want failure to pay adequate wage statements and waiting time. So if we accept your theory, doesn't that mean there has to be at least four, maybe even eight different sets of counsel? No, I don't believe so. Why not? I believe there's a distinction because there has to be a line drawn on which classes, how the classes are separated. If it weren't that way, how would you separate even the pet stylist class from the non-exempt stylist class? So there has to be a line drawn. There has to be some distinction between the classes. Once those classes are or once those lines are drawn, I believe that if there's an appearance of a conflict or a conflict, there needs to be separate representations. But I guess your, if you will, your answer to my colleague, blings to me the fact that in this particular decision made by the district court was made, again, on abuse of discretion basis. Wasn't it? I believe so, Your Honor. A clear abuse of discretion. In other words, it's got to be more than general abuse. It's got to be clear abuse, right? Correct, Your Honor. So I realize that you want to look at People, XREL, Department of the Corps, and In re Charleas, and flat. But if I look at Radcliffe, Radcliffe suggests that there need not be a disqualification. And that, in my book, says, I've got to look again. Is this an abuse based on the case law that's in front of me? And I realize you can have an argument your way, but I realize also the district court has a chance to make that decision itself. So again, it's a discretionary decision, and I'm hard to see why, given Radcliffe, this would be an abuse of that discretion. Well, in Radcliffe, Your Honor, it dealt with Radcliffe and Rodriguez v. Dissner both dealt with improper incentive awards that were taken away. They were removed. Here, you don't. The conflict was never removed. And also, this happened without an adversarial motion for certification. This issue of conflict was never really dealt with by the lower court until I raised it in my objection. But Radcliffe, I believe, is completely distinct. In all the cases that I've cited, at one point or another, the conflicts were removed. In Walker v. Apple, the conflict was removed. In Radcliffe, the conflict was removed. And in Rodriguez, the conflict was removed. My worry is that I can't really look forward to what's going to happen, whether removed or unremoved. What I've got to look at is, given my case law on the books at the time the court makes the decision, is an abuse of discretion. I mean, is it totally out of it? Can it never work? And I couldn't find it. I can't, even if I disagreed and I made it differently, I can't say what the district court did was that. And I owe deference there. Not general abuse. This has got to be clear abuse, which, to me, says it's probably illegal. I can't find that. Well, I believe that this case falls exactly in line with Walker v. Apple, Inc., Cays v. Pacific Lumber. I think the facts are almost identical, and also Lew v. Mollabs. I think those fact patterns are identical to this situation. And did we in those cases say the court abused its discretion? I'm not sure that the court says that the court abused its discretion. I mean, I read the decisions. I'm not sure the court isn't saying the same thing in those cases I'm saying. The district court was the best one to make that decision. Well, I believe that — I'm not sure. I can't say offhand whether they found an abuse of discretion. I only can say that the courts agreed with the disqualification. If your client, Ms. Loomis, didn't think that she was being treated appropriately from this limited fund, she had a right to opt out, didn't she? And why wouldn't that have solved the problem? That is true. They can opt out. But you can say that with every class action. Who's watching the absent class members? Well, the district judge. And he looked at the entire scope of the settlement terms, including who would get what and under what formulas. The district judge concluded that this was fair, fulfilling the district judge's responsibility. And if an objector doesn't like it, the objector had the opportunity to opt out. That is true. But like I said, I think you could argue that with any class action. I think the issue is, was there a conflict and was it appropriately handled? I don't think it was dealt with in this case. Thank you, counsel. You've exceeded your time, but we'll give you a minute for rebuttal when the time comes. Thank you, Your Honor. Good morning. Graham Hollis. May it please the Court. I'm here appearing for all three subclasses as well as my four individual clients. To go and start with the initial thing, because I think that probably in and of itself here would resolve the case, there is no evidence or explanation has been presented even to date, not even before this panel, as to when this objection was actually filed and whether it was actually signed even by the proper objector at the time it was filed. In view of the fact that the district court went on to consider the merits, why shouldn't we also do so? I intend to address the merits as well. No, I know you intend to. I'm asking you why we shouldn't go ahead and consider the merits. That's a great question. I understand. You may be right that the district court didn't stop it. No, I think what the district court was doing was a belt and suspenders approach here. I think the court did exclude the objection. Right. Why shouldn't we go to the merits of it and decide it? I think that I'd be happy for the court to resolve this thing on the merits. I think that either way the decision should stand. In the same way that the district court dealt with it in terms of that even on the motion for reconsideration, Judge Davila said that the objector was unable to explain why a photocopy of the objections contained an original signature and was unable to state when the documents were signed. So there was no evidence. But I think the district judge wanted to be sure to have addressed the merits to make sure. Well, let's go to the merits, since I'm interested at least in hearing your view on whether it's permissible to advocate on behalf of the subclasses. It's commonplace. And I think that what we have to deal with here is the instruction that we have from Judge Tiger, who was a district judge sitting by designation who drafted the opinion of Radcliffe v. Hernandez. And maybe that is why he was a little bit more sympathetic to the plight of the district courts who have to handle these types of cases day in and day out in approving settlements and dealing with situations where there are objectors. And Judge Tiger says that conflicts of interest among class members are not uncommon. It is one of the areas of law where there are certainly prone to be certain types of conflicts of interest. And what he said, that these arise from many different issues, and that the court may tolerate certain technical conflicts in order to permit attorneys who are familiar with the litigation to continue to represent the class. I had a factual question about this area. It was unclear to me as to whether the pet stylist class, in fact, did have separate counsel, because there were fees awarded also to capstone law, which I understood represented the pet stylist class. Were you both representing that class? I mean, that may obviate the need to go through all of this if there was, you know, was a separate lawyer looking out for the interests of that subclass. Yes. In fact, there was a separate lawyer. The capstone firm did intervene into the action for purposes of representing the pet stylist class. My firm... In the settlement discussions. Yeah. During the settlement discussions and during the... There was an amended settlement. So it was while the settlement discussions were going on, there was a settlement agreement, they intervened, and then there was an amended settlement agreement that came along. And, in fact, counsel from capstone is here present in court, Ryan Wu. We were still lead counsel for that class, but they were also there in the case representing the interests of the pet stylist. And only that subclass. Only that subclass. That's correct, Your Honor. So back to your comment about Judge Tiger and Radcliffe. And in my day job, as you know, I do sit on the district court. So give me a bright-line test. How do I know when it is appropriate to require separate counsel for different classes, and when must I require separate counsel? It is going to... And when must I do it, when may I not do it? It's really going to be dependent upon the facts of each particular case. I can give you an example. I deal with these cases all the time. So, for example, in the meal break case where you have, say, in a retail facility and you have a manager there, and the manager may also be an hourly paid employee, so may be a non-exempt employee, and the rank-and-file workers may be going to be non-exempt employees as well. Oftentimes, the systems are set up, the practices and procedures are, that the manager might determine when the rank-and-file people should take the breaks. So if you had a class that consisted of a meal break violations and you were contending that both the supervisors and the supervised were missing meal breaks, it probably would be a difficult conflict of interest to resolve for an attorney to represent both the supervisors and the rank-and-file employees in that circumstance. But now can you generalize that for me? Because if the best we can do is say it's a case-by-case basis, so be it. But I think it would be more helpful if we understood what is the criteria under which a district court should decide whether separate classes do or do not need separate counsel. Well, I think the district court does need to carefully examine these cases and make that determination. And I think, Judge— Using what criteria? Well, you need to be able to determine whether or not the interests of the class are going to be suffering if there's some irreconcilable conflict here. Each of the four plaintiffs were members of both classes. In fact, Ms. Loomis is a member of both class. And so usually when you deal with conflicts of interest, it's more dealt with the issues of dealing with attorney-client confidentiality. But here you have the same clients that are in both classes. Or in your example, the supervisor might actually be responsible for creating liability for the other folks. Exactly. And so by the fact that what's the significance of a person being in both subclasses? It is that they can't be really separated out, and it's just a question of, you know, creating a formula for compensation depending on those roles. It really is in this particular case, that's the situation. Most of the class members were class — were non-pet stylists before they became pet stylists. They make more money as pet stylists. It's a natural progression for them. Even as a trainee, they would not be compensated in the same fashion as the pet stylists were. And in fact, it was the creation of the subclasses that made the settlement even more fair because it allowed those people to be compensated at a higher level that was commensurate with the types of damages that they were suffering because they were compensated higher and in a different fashion on a commission-only basis. So why is your case different from AmChem? From which one? AmChem. The Supreme Court's decision on AmChem. Well — That's the one where they had a future class that needed separate counsel. People that hadn't yet been injured. Well, here there's no future class here in this case because everything is going to be in the settlement here. I'm a little reluctant to go over my time because I've got the PetSmart counsel. I wanted to reserve some time for them to make sure that they had some time to be heard as well. Are you satisfied with that answer? Okay. You may yield. Maybe PetSmart's counsel will give me a more generalized criteria. Your Honors, may it please the Court, Kerri Gunnell representing PetSmart. And I actually would like to start with your question, because I think it's an important one. And unfortunately, I can't give you a clear answer because it's well beyond the scope of this case. What I can tell you is that there's a clear delineation on one side given the case law and on the other where our case falls. One thing we do know from the controlling cases here is that when you have a situation where you have multiple conflicting ongoing class actions or you have agreements with the class members that may constitute some interference or agreement with respect to the representation, we know that those are cases that fall in the bucket of you need separate counsel. We know that from Radcliffe and the other cases. And then you have this case, which falls on the other end of the spectrum, and that is a case where you have a sum of money being claimed in the settlement. By this point, it's always going to be a fixed sum, right, because we know what the settlement amount is. Whatever that amount is, and there are multiple groups of employees who have overlapping but not coterminous interests. That is not a case where you necessarily need separate counsel. That much we also know. What happens in the gray area that's beyond the scope of this case, I think is beyond what's currently before the panel. But I would say that granting the objector's position here, what that would do to your day-to-day job, Judge Simon, is make it much more complicated and encourage objectors to come in at multiple points in the settlement. So just quickly, with another 30 seconds or so, I'll say if we think about at preliminary approval, an agreement with the objector in this case would encourage objectors to try to find the multivariate subclasses that Judge Simon was talking about. If the district judge says, wait a second, this is a case where we need subclasses, it encourages an objector to come forward and contest that determination. If those subclasses have separate counsel, which as you point out, Judge Griever, they did in this case, it encourages an objector to challenge that determination as well. All of these issues were before Judge D'Avila. He issued a 25-page, well-reasoned decision with respect to the approval of the settlement, and there's simply no evidence of a clear abuse of his discretion in this case. Roberts, may I ask, what relevance, if any, do we give to the fact that the objector could have opted out and pursued a separate claim? You know, we heard Mr. Huber argue that that should have no relevance at all because that would be true in any situation with an objection. Do you agree with that? Or if not, why do you disagree? Well, what I would say about the objection situation, it is true that the individual objector could opt out. That's somewhat irrelevant to Judge D'Avila's job, which he performed so well in this particular case, of reviewing any issues that he independently sees in the settlement agreement or that are raised before him in the case of an objector. And he did that here. So the fact that she has a potential exit strategy to preserve her claims allows her to pursue them separately, but the objection process, running its course the way it did in this case, allows Judge D'Avila to do his job of considering whatever infirmities there may be with the settlement and addressing them before final approval is given. Thank you, counsel. Thank you. Mr. Huber, you may have a minute for rebuttal. Just very quickly, Your Honor. I would just like to say that even if the document had to be signed, it was still filed on the last day within the time frame, and it was corrected, which is allowed by the rules. I think not accepting the corrected document to be or the signature to be affixed afterwards, which is allowed by the rules, is an abuse of discretion. On the document side, it's an abuse of discretion issue. On the settlement approval, in Judge D'Avila's opinion, I think the case law says it's a clear abuse of discretion. What's the difference? An abuse of discretion, a clear abuse of discretion? I don't know. I think it's probably like pornography. You know it when you see it. Okay. Fair enough. May I just say one more thing about Negrit and Capstone? Could not have resolved this because class counsel is still on both sides, even though that counsel is there. And Negrit came out on the winning side. They were on the two-thirds side. I have nothing further. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate the arguments from all three of you. They've been very helpful. We will take about a ten minute break.
judges: Graber, N.R. Smith, Simon